1

2

3

4                     UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
5                              AT SEATTLE

6   ERNEST JACK,

7                          Petitioner,         Case No. C14-00153-MJP-BAT

8           v.                                 **REPORT AND**
                                               **RECOMMENDATION**
9   JEFFREY UTTECHT,

10                         Respondent.

11          Petitioner Ernest Jack seeks 28 U.S.C. § 2254 habeas relief from his convictions on a

12  guilty plea for two counts of rape of a child in the second degree and assault in the second degree

13  – domestic violence.  Dkt. 14.  Mr. Jack contends that he was denied effective assistance of

14  counsel.  The Court recommends **DENYING** the claims as Mr. Jack has failed to demonstrate

15  that the state-court adjudication of his claims was contrary to, or an unreasonable application of,

16  established federal law, or was an unreasonable determination of the facts in light of the evidence

17  presented.  *See* 28 U.S.C. § 2254(d)(1)–(2).  The Court also recommends **DENYING** an

18  evidentiary hearing and issuance of a certificate of appealability.

19                              **BACKGROUND**

20  **A.      Statement of Facts**

21          The Washington Court of Appeals summarized the facts as follows:

22                  Ernest Jack was charged in 2009 with rape of a child in the first degree,
            rape of a child in the second degree, rape of a child in the third degree, and sexual
23          exploitation of a minor. According to the certification of probable cause filed
            along with the charges, Jack had begun having sexual intercourse with his

REPORT AND RECOMMENDATION- 1

daughter E.J. when she was 6 years old and did not stop until Jack's arrest when E.J. was 15. Jack videotaped some of the sessions and police recovered some of those tapes. In addition, investigators learned that Jack had also attempted to have intercourse with another daughter, M.J., when she was 15 or 16 years old. As part of a negotiated plea agreement, Jack ultimately entered a guilty plea to reduced charges of two counts of rape of a child in the second degree for E.J. and one count of assault in the second degree for M.J., based on a theory of assault with intent to commit incest.

Dkt. 25, Exhibit 2 at 1.

**B.     Statement of Procedural History**

Mr. Jack filed a notice of appeal on July 1, 2010.  Dkt. 25, Exhibit 3.  On January 13, 2011, Mr. Jack filed a motion to withdraw his appeal.  *Id.*, Exhibit 4.  The Court of Appeals granted the motion.  *Id.,* Exhibit 5.  The state court issued the mandate on February 22, 2011. *Id.*, Exhibit 6.

On February 10, 2011, Mr. Jack filed his first personal restraint petition.  *Id.*, Exhibit 7. The Washington Court of Appeals denied the petition.  *Id.,* Exhibit 2.  On October 13, 2011, Mr. Jack filed a motion for discretionary review.  *Id.,* Exhibit 9.  The Washington Supreme Court denied review on March 1, 2012.  *Id.,* Exhibit 10.  A certificate of finality was entered on May 23, 2012.  *Id.,* Exhibit 11.

On January 27, 2012, Mr. Jack filed his second personal restraint petition.  *Id.*, Exhibit 12. On March 16, 2012, Mr. Jack filed a motion to amend and supplemental pleadings.  *Id.,* Exhibit 13.   The Washington Court of Appeals denied the petition.  *Id.*, Exhibit 14.  A certificate of finality was issued on August 8, 2012.  *Id.*, Exhibit 15.

On November 28, 2012, Mr. Jack filed his third personal restraint petition.  *Id.*, Exhibit 16.  The Washington Court of Appeals dismissed the petition. *Id.,* Exhibit 18.  On April 11, 2013, Mr. Jack filed a motion for reconsideration.  *Id.*, Exhibit 19.  The Washington Supreme Court treated the motion as a motion for discretionary review and denied review on November

1  26, 2013.  *Id.*, Exhibit 20.  The certificate of finality was entered on February 5, 2014.  *Id.*,

2  Exhibit 21.

3                                        **EVIDENTIARY HEARING**

4         The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.*

5  *Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing

6  could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

7  the applicant to federal habeas relief."  *Landrigan*, 550 U.S. at 474.  In determining whether

8  relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

9  the state court.  *Cullen v. Pinholster*, ---U.S.---, 131 S.Ct. 1388 (2011).  A hearing is not required

10  if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,*

11  550 U.S. at 474.  "It follows that if the record refutes the applicant's factual allegations or

12  otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

13  *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011).  The Court finds it unnecessary to hold an

14  evidentiary hearing because Mr. Jack's claims may be resolved on the existing state court record.

15                                            **DISCUSSION**

16

17         Mr. Jack raised four separate grounds for relief in his petition, all based on his contention

18  that his counsel rendered ineffective assistance when: (1) she failed to question his competency

19  to plead guilty; (2) she failed to order an evaluation even though she knew of his mental issues;

20  (3) she failed to investigate and present mitigating evidence; and (4) she failed to communicate

21  with him.

22         Under the two-prong standard of *Strickland*, a petitioner must show that counsel's

23  performance was so deficient that it "fell below an objective standard of reasonableness."

*Strickland v. Washington*, 466 U.S. 668, 686 (1984).  He must also show the deficient

REPORT AND RECOMMENDATION- 3

1  performance so prejudiced the defense that it deprived him of the right to a fair trial and caused

2  the state court proceedings to be unreliable.  *Id.* at 687.  A petitioner must satisfy both prongs.

3  *Id.* at 697.

4  **A.    Claims 1 and 2 - Failure to Request Competency Evaluation**

5         In his first two claims, Mr. Jack alleges that his counsel was aware that he suffered from

6  certain mental issues based on a report from the Veterans Administration (VA) and "strange

7  letters" from him that would have made any reasonable attorney question his competency to

8  plead guilty.  Dkt. 14 at p. 5.

9         Mr. Jack raised the issue of his alleged incompetence in his second and third personal

10  restraint petitions.  Dkt. 25, Exhibit 12; Exhibit 16.  The Washington Court of Appeals first

11  denied this claim stating, "Jack fails to offer any adequate explanation of how an investigation

12  into his psychological health would have affected counsel's ability to assist him in deciding

13  whether to plead guilty to the reduced charges."  *Id.*, Exhibit 14, p. 3.  In response to the second

14  petition, the Washington Court of Appeals again denied this claim stating:

15              The report Jack provides in support of his petition demonstrates that he
16          was diagnosed with major depressive disorder and post traumatic stress disorder
            following a 1997 psychiatric examination.  The report also documents Jack's
17          struggle [with] alcohol abuse.  Nothing in this report, however, establishes that he
            was unable to understand the nature of the plea proceedings more than a decade
18          later or that his plea was anything other than knowing, intelligent, and voluntary.
            Jack does not dispute that he signed a written plea statement and attended a
19          formal plea hearing.  These practices and procedures provide prima facie
            verification of voluntariness of her[sic] plea.  *See State v. Osborne*, 102 Wn.2d
20          87, 97, 684 P.2d 683 (1984).  "More should be required to overcome this 'highly
            persuasive' evidence of voluntariness than a mere allegation by the defendant."
21          *Osborne*, 102 Wn.2d at 97.

22  Dkt. 25, Exhibit 18, pp. 3-4.

23         Mr. Jack argues that the VA report should have alerted counsel to request an

    evaluation and specifically mentions he suffers from memory loss and has problems following

REPORT AND RECOMMENDATION- 4

1   directions.  Dkt. 14, p. 7.  However, the VA report states: "His intelligence appears to be at least

2   average.  His memory for recent and remote events appears to be good.  There is no evidence of

3   hallucinations or delusions."  Dkt. 14-1, p. 19.  Mr. Jack also relies on letters he sent to defense

4   counsel and states these "strange" letters also should have alerted counsel that a competency

5   evaluation was warranted.  However, in the letters, Mr. Jack states:

6           I am very sorry and ashame [sic] for what I did.  More than once I said I
        would stop and not do it again.  And told her that.  I was trying to get my life
7       together . . . . Then she'd call me and ask to come over.  My mind and body is
        weak.  I knew it was wrong what I was doing and I am not trying to get out of
8       paying for it.  And that thing about Marika I don't understand. . . . When Sherita
        was not there Marika would sleep in my room.  When I came back that night I had
9       no idea who was in my bed but Marika had never been in my bed and shouldn't
        have been in there.  When I relize[sic] who it was I stopped.

10

11          [I] don't mine[sic] doing 20 years on parole but please not 20 years in
        prison.

12  Dkt. 14, pp. 22-23[1].

13          This first letter demonstrates that Mr. Jack was well aware of what he had done to his

14  victims and knew it was wrong but did not stop his behavior.  Mr. Jack blames his behavior on a

15  "weak body" and blames his behavior with Marika on mistaken identity.  However, nothing in

16  this letter would lead his counsel to believe Mr. Jack suffered from some mental defect that

17  required a competency evaluation.

18          In a second letter, Mr. Jack states that he told his victims to grow back their pubic hair

19  and argues that this is evidence that he would not mess with a 6 year old.  Dkt. 14-1, p. 24.  He

20  also states: "I told no one about my being raped until I told my psychiatric a couple of years ago.

21  I was too ashame [sic] to tell anyone.  Maybe at that time I was trying to tell some one [sic]

22

23  ---
[1] In a "motion to amend and supplemental pleadings" filed on July 15, 2014, Mr. Jack raises a concern that the Court not mistake M.J. with "Monika."  Dkt. 31.  The Court is aware of the distinction and has referred directly to the language in Mr. Jack's letter.

REPORT AND RECOMMENDATION- 5

about Earnesha." *Id.*, p. 25.

There is nothing in these letters to suggest that Mr. Jack did not have the ability to understand exactly what he was pleading to and the consequences of his actions. The state courts determined that Mr. Jack failed to show prejudice from any alleged ineffective assistance:

> In his prior petition, Jack claimed that his plea was involuntary because of trial counsel's ineffective assistance during the plea process and at sentencing. No. 66788-2-I. Jack failed to establish deficient performance or resulting prejudice and his petition was dismissed. Likewise, here, Jack cannot show a reasonable probability that his ineffective assistance of counsel claims would have been successful if raised on appeal.

Dkt. 25, Exhibit 14, p. 3.

> Jack fails to establish deficient performance of counsel or that withdrawal of his plea is necessary to correct a manifest injustice. His untimely petition must be dismissed.

Dkt. 25, Exhibit 18, p. 4.

There is nothing in the record to suggest a competency evaluation of Mr. Jack would have been of any assistance in his case. Thus, counsel would have had no legitimate basis to request one. The state courts' adjudication of Mr. Jack's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent for purposes of 28 U.S.C. § 2254(d), and it is recommended that Claims 1 and 2 be denied.

**B.     Claim 3 - Mitigating Evidence at Sentencing/Failure to Investigate**

Mr. Jack also argues that his counsel provided ineffective assistance because she failed to present evidence of his alcoholism, abuse, PTSD, depression and memory loss, and failed to investigate the statement of M.J.

**1.     Mitigating Evidence at Sentencing**

Mr. Jack's allegation of ineffective assistance arises in the context of a non-capital sentencing proceeding. In *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir.2006), the Ninth

REPORT AND RECOMMENDATION- 6

1   Circuit questioned whether a claim of ineffective assistance of counsel in a non-capital

2   sentencing proceeding is governed by the two-part test that the Supreme Court established in

3   *Strickland v. Washington*, 466 U.S. 668  (1984).  Assuming, for purposes of argument, the

4   *Strickland* test does apply, Mr. Jack must demonstrate both that his second attorney's

5   performance at sentencing was deficient and he suffered prejudice as a result. *Strickland*, 466

6   U.S. at 687.

7          The record reflects that counsel did, in fact, present mitigation evidence at sentencing:

8                  And on Mr. Jack's behalf, Your Honor, I would simply state that he did a
           very terrible thing for a period of time in his life, Your Honor.  During that period
9          of time he also did things that weren't terribly[sic]. . . . I would like the Court to
           know that in his life he has done good things as well, and part of that was to care
10         for the young children. . . .  [A]ll of his children are entitled to the benefits that he
           received from the VA . . . so that the children can get funds from the federal
11         government.
                   . . . .
12                 [H]e has had possible circumstances in his life that may have led to
           behavior on his part – substance abuse combined with his history of being
13         violated himself – and unfortunately has manifested itself this way.

14  Dkt. 25, Exhibit 22, pp. 9-10.

15         The Washington State Court of Appeals rejected Mr. Jack's claim that his counsel

16  failed to provide mitigating information at sentencing:

17                 [T]he limited record contradicts rather than supports Jack's claim. The
           excerpts of the transcripts Jack has provided show that counsel did provide
18         mitigating information relating to Jack's status as a veteran, the positive things he
           had done as a parent, and his struggles with substance abuse. The record therefore
19         reflects that counsel made strategic choices about what to provide the court to
           support counsel's attempts to persuade the court to sentence him to the low end of
20         the sentencing range.

21                 Moreover, even with this supplemented record, Jack still has established
           no likelihood, given the nature of his crimes, that the trial court would have
22         imposed any sentence more lenient than it did if his counsel had presented any
           different arguments at sentencing.

23

REPORT AND RECOMMENDATION- 7

1          In short, Jack has not established a nonfrivolous claim of either deficient
performance or resulting prejudice to substantiate his claim of ineffective
2    assistance of counsel.

3    Dkt. 25, Exhibit 2, p. 5.

4          The state courts' adjudication of Mr. Jack's claims was neither contrary to, nor an

5    unreasonable application of, clearly established Supreme Court precedent for purposes of 28

6    U.S.C. § 2254(d), and it is recommended that this claim be denied.

7          **2.    Failure to Investigate**

8          Mr. Jack contends that his counsel failed to investigate M.J.'s statement and that she had

9    a duty to do so notwithstanding his admission.  Dkt. 14, p. 8.  To the extent Mr. Jack is

10   contending that this omission resulted in insufficient evidence to support the charge against him,

11   he waived that claim when he pled guilty.  "[W]hen a criminal defendant has solemnly admitted

12   in open court that he is, in fact, guilty of the offense with which he is charged [he may only

13   attack the voluntary and intelligent character of the plea, and] he may not thereafter raise

14   independent claims relating to the deprivation of constitutional rights that occurred prior to the

15   entry of the plea." *Tollet v. Henderson*, 411 U.S. 258, 267 (1973); *Moran v. Godinez*, 57 F.3d

16   690, 700 (9th Cir. 1994) (superseded on other grounds by AEDPA).

17         At the plea hearing, the prosecuting attorney read Mr. Jack's statement in open court and

18   Mr. Jack affirmed it was an accurate statement of the facts:

19         MS. KAYS:  "Also in King County, Washington, during a time, a period of time
           intervening between December 17th of 2004 to December 17th of 2007, I
20         assaulted M.J. with the intention of committing a crime of incest in the second
           degree.  I did this intentionally.  I am the father of E.J. and M.J."  Sir, your
21         attorney wrote this statement out and there are also several additions that were
           made by me.  I'm going to ask you to initial that at the end of our conversation
22         here.  But do you adopt this statement as your own?

23         MR. JACK: I do.

REPORT AND RECOMMENDATION- 8

1   MS. KAYS: And is it a true and accurate statement?

2   MR. JACK: It is.

3   MS. KAYS: Sir, I'm going to ask you, has anybody made any threats or promises
    to you, in order for you to enter into this plea?

4   MR. JACK: No.

5   MS. KAYS: Do you enter into this plea freely and voluntarily?

6   MR. JACK: Yes.

7   Dkt. 25, Exhibit 22, pp. 9:16-28 – 10:1-7.

8       Mr. Jack pled guilty and admitted in open court that the facts were true and accurate.  As

9   noted by the state courts: "his admissions in the plea form established the factual basis for his

10  plea."  Dkt. 25, Exhibit 2, p. 3.  He cannot now claim insufficiency of the evidence to support an

11  ineffective assistance of counsel claim.  Even assuming *arguendo* that Mr. Jack has not waived

12  this claim, he cannot show deficient performance.

13      In a letter to his attorney, Mr. Jack states that M.J. should not have been in his room and

14  when he realized who it was, he stopped.  Dkt. 14-1, p. 22.  However, the certification for

15  probable cause states:

16
17          He was touching her vagina with his hand, over her pajamas.  She asked,
        "What are you doing?"  He said, "Come on, just a little bit."  She told him no.  He
        continued to ask, and to try to have sex with her.  She finally told him that if he
18      didn't stop, she would scream.

19  Dkt. 25, Exhibit 8, p. 47 (Appendix C).

20      Thus, counsel could reasonably have had concerns that a jury would not believe Mr.

21  Jack's explanation that it was an accident as it was his own daughter, whose voice he would have

22  recognized, who had to repeatedly tell him no and threaten to scream before he stopped the

23  assault.  In addition, as noted previously, the state had copies of videos Mr. Jack made where he

REPORT AND RECOMMENDATION- 9

1   sexually assaulted victim E.J.  Once a jury saw this evidence, it would be difficult to believe that

2   Mr. Jack's assault on M.J. was an accident.  Under these circumstances, further investigation

3   would have been fruitless or even harmful.  *Strickland*, 466 U.S. at 691 (when a defendant has

4   given counsel reason to believe that pursuing certain investigations would be fruitless or even

5   harmful, counsel's failure to pursue those investigations may not later be challenged as

6   unreasonable).   With the evidence against him, counsel's decision to negotiate a reduced charge

7   was reasonable.

8        The state courts' adjudication of Mr. Jack's claims was neither contrary to, nor an

9   unreasonable application of, clearly established Supreme Court precedent for purposes of 28

10  U.S.C. § 2254(d), and it is recommended that Claim 3 be denied.

11  **C.      Claim 4 - Failure to Communicate**

12       Mr. Jack alleges that he was unable to communicate with his counsel because he did not

13  trust her and argues that he wrote to several people informing them of this fact.  Dkt. 14, p. 10.

14  However, the record does not reflect that Mr. Jack informed the court of any distrust or a lack of

15  communication.  In letters attached to his petition, Mr. Jack makes no mention of any distrust or

16  his counsel's failure to communicate.  Dkt. 14-1, pp. 12-14.

17       The record reflects that Mr. Jack wrote letters to his counsel and in those letters also

18  refers to previous conversations with counsel.  Dkt. 14-1, pp. 22-25.  During his plea hearing,

19  Mr. Jack confirmed that his counsel had reviewed the plea form with him and that she was able

20  to answer all of his questions.  *Id.*, Exhibit 23, p. 3.  He also confirmed that his counsel had

21  reviewed with him the ramifications of pleading guilty.  *Id.* at 7.

22       The proper standard for attorney performance is that of reasonably effective assistance.

23  *Strickland*, 466 U.S. at 687.  "From counsel's function as assistant to the defendant derive the

overarching duty to advocate the defendant's cause and the more particular duties to consult with

the defendant on important decisions and to keep the defendant informed of important

developments in the course of the prosecution." *Id*.  The purpose of the Sixth Amendment is

simply to ensure that criminal defendant's receive a fair trial.  *Id*.  Mr. Jack's claim that his plea

was involuntary because of his trial counsel's ineffective assistance during the plea process and

at sentencing was rejected by the Washington courts of appeal because he failed to establish

deficient performance or resulting prejudice.  The state courts' adjudication of Mr. Jack's claims

was neither contrary to, nor an unreasonable application of, clearly established Supreme Court

precedent for purposes of 28 U.S.C. § 2254(d).

Mr. Jack fails to show that his counsel's performance was deficient.  Rather, the record

shows that she discussed the plea form with him, answered his questions, and informed him of

the ramifications of pleading guilty.  Because he cannot show that his counsel was deficient, he

cannot show prejudice and therefore, Claim 4 should be denied.

## D.     Certificate of Appealability

If the district court adopts the Report and Recommendation, it must determine whether a

certificate of appealability ("COA") should issue.  Rule 11(a), Rules Governing Section 2254

Cases in the United States District Courts ("The district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant.").  A COA may be issued only

where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See*

28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  *Jack-El v. Cockrell*, 537 U.S. 322, 327 (2003).

REPORT AND RECOMMENDATION- 11

The Court recommends that Mr. Jack not be issued a COA.  No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further.  Mr. Jack should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

The Court recommends **DENYING** Mr. Jack's habeas petition on the merits without an evidentiary hearing, and **DENYING** the issuance of a certificate of appealability.

Any objections to this Recommendation must be filed and served upon all parties no later than **Monday, August 11, 2014.**  The Clerk should note the matter for **Thursday, August 14, 2014,** as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this  22nd  day of July, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 12